IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Bobby Ward,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>　　　　Defendant. | No. 1:06-cv-00837-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

## **PRELIMINARY STATEMENT**

1. This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment.  In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## **JURISDICTION**

2. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

1

## PARTIES

3. Bobby Ward is a Black employee of NGSS who has been employed by NGSS since 1996, except for a two-year leave of absence from 1968-1970 due to being drafted into the military.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian.  It is located in Pascagoula, Mississippi.  It is an employer for purposes of Title VII.  On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended.  NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit:  an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

2

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race.  The case was assigned a case number of 1:01-cv-111-(G)-(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-cv-111-(LG)-(RHW).

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

3

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Bobby Ward's severed action was assigned the case number of 1:06-cv-00837-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a) By failing to treat Blacks on an equal basis with Whites.

   b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

   d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

   e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

4

inured to the determent of Black employees historically.

f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h) By demoting Black employees at a disproportionate rate as compared to White employees.

i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

<u>**SPECIFIC CLAIMS FOR RELIEF**</u>

<u>**TITLE VII AND § 1981**</u>

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

5

21. Throughout his 40 years at NGSS, plaintiff has applied for promotive positions on numerous occasions. Although plaintiff was qualified for the positions for which he applied, he was not selected. The means used to determine plaintiff to be unqualified have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This discriminatory denial of promotions includes the following instances:

   a) In the 1970s, plaintiff applied for Quality Assurance, but his application was denied.

   b) In or about 1985, plaintiff applied for Boat Foreman, a new position for which plaintiff was qualified, but for which he was not selected because of his race. A White man, Mr. Mahaffey was selected.

   c) In or about November 2000, plaintiff applied for Welding Superintendent, a position for which plaintiff was qualified, but for which he was not selected because of his race. A White man, Lewis Carter, was selected.

22. Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted, and, therefore, Plaintiff has not always applied for promotive positions for which he was qualified, nor was he always considered by his superiors for such positions. For example, during the 1980s, NGSS hired individuals from outside the company into foreman positions. Although plaintiff had been a supervisor for fourteen years at that time, he was not considered for the positions. Plaintiff has also observed that the availability of positions was not always publicized. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

23. Plaintiff has been demoted at times, during which similarly situated White co-workers with fewer years of seniority were not demoted. Plaintiff was not informed of the reason why he was demoted while White co-workers with fewer years of seniority were not. This includes the following instances:

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

6

  a) Plaintiff was demoted in or around March 1979, June 1980, March 1985, and 2000. Each time plaintiff was demoted; White employees with less seniority than plaintiff were not.

  b) In or around 2000, plaintiff was demoted from foreman to supervisor. At that time, four out of the four Black welding foremen were demoted while only one or two out of thirteen White foremen were demoted. Each of the Black foremen had more seniority than the majority of the White foremen who retained their positions.

24. Plaintiff has received less compensation than similarly situated White co-workers for doing the same job. Plaintiff has been made aware of the discrepancy by having seen the checks for his White counterparts. Plaintiff became aware of such disparity in the following instances:

  a) Plaintiff has been informed by his superiors that he has received lower wage increases than White workers in his department who earn less than he does. Plaintiff observes that while his raises are reduced, his White co-workers' raises are increased, and that such increased wages appears correlated to his superiors' friendships with other White employees. Indeed, this was a common practice in the 1980s through the 1990s.

  b) In or around 1990, J.E. Maskew, Winston Pierce, B.R. Ivey, and Guy Middleton, White employees in the same position as plaintiff, earned more money than he. Plaintiff established this fact by having seen the check stubs of those individuals

  c) During the 1980s and early 1990s, although plaintiff was a foreman supervising White supervisor J.C. George, plaintiff earned less money than George. Plaintiff determined this fact by having seen one of George's pay stubs.

25. Plaintiff has observed that similarly situated White employees are provided training opportunities that plaintiff has never been selected for, in spite of being qualified to be chosen. For example, plaintiff's supervisor, C.K. Berry groomed a White employee, Steve Ivey to replace Berry when he retired. Plaintiff was not considered for training or promotion at that

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

7

time, even though was qualified and even though no Black employees in the department were being provided developmental opportunities.  Plaintiff is informed and believes, and thereby alleges that this occurred in 1999-2000.  The selection process for excluding Plaintiff from this type hands-on training has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

26. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace.   Plaintiff has been assigned to such employment environments in at least the following instance:

    a) In the 1980s, plaintiff and other Black workers were disproportionately assigned to work on the oilrigs; the environment for this work was so hot that the welders had to wear special clothing to protect themselves.

27. Plaintiff has been retaliated against or suffered adverse consequences for opposing NGSS's discriminatory employment practices.  Since the filing of the lawsuit in *Thompson, et al. v. Ingalls Shipbuilding, et al.*, plaintiff has observed that shunning by White Supervisors has worsened.

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS.  NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Indeed, when plaintiff first came to work in the shipyard there were separate toilets for blacks and Whites; there were separate water fountain signs designating separate ones for Blacks and Whites, and there were separate lines in the cafeteria for Blacks and Whites.  Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS.  Such exposure includes the following

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

8

instances:

    a) Plaintiff has seen offensive racially derogatory graffiti throughout his tenure at NGSS.  Plaintiff has observed graffiti including the word "nigger," as well as graffiti seemingly designed to recruit membership in the KKK.  Such graffiti was present through the 1990s.

    b) Plaintiff has observed supervisory personnel present in restrooms at times during which such offensive racially derogatory graffiti was present, but, to plaintiff's knowledge, none took steps to remedy the situation.

29. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS.  NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS.  This includes the following instances:

    a) Plaintiff has heard White employees, including those in management, use the word "nigger," at least through the 1990s.  Plaintiff heard a White superintendent once saying that a White worker looked like a "nigger."  He has also heard White employees say they would not work for a "nigger."  After one such incident, plaintiff complained to foreman John Allen McNair, who gave the White employee making the comment only a verbal reprimand.  Plaintiff did not complain about other incidents because he felt that it would not stop their occurrence.

    b) Plaintiff was subject to intense scrutiny and ridicule by individuals including White general superintendents Danny Savage and Carey Thornhill during weekly

Plaintiff Bobby Ward's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00837-LG-RHW

9

management meetings he has attended over the last year.  The mistreatment was so severe that plaintiff dreaded participating in such meetings.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS.  NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about seeing these nooses, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS.  Such exposure includes the following instances:

   a) Plaintiff has seen nooses at NGSS.  In or around March 2001, some employees who found a noose gave it to plaintiff in his position as superintendent.  Plaintiff took the noose to his superiors, Danny Savage and Glen Winbush, who found the presence of the noose comical.

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 27, incorporated as though fully set forth herein.

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

33. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

34. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

35. NGSS has failed to take steps to remedy and correct promptly the harassing behavior

Plaintiff Bobby Ward's Complaint for                                                                                       10
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

occurring in its workplace. NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding the same. NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 28 through 34, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

36. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

37. No plain, adequate, or complete remedy at law is available to plaintiff. Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers with NGSS. Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

38. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

39. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 38 and further alleges for a first claim for relief as follows:

40. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

Plaintiff Bobby Ward's Complaint for   11
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

**SECOND CLAIM FOR RELIEF**

41. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 38 and further alleges for a second claim for relief as follows:

42. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

**THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES**

43. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

44. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

**PRAYER**

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 35 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Issue a preliminary and permanent injunction enjoining NGSS, its agents, successors, employees, attorneys, and those acting in concert with it from

Plaintiff Bobby Ward's Complaint for                                                                                                     12
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

    engaging in each of the unlawful practices set forth in paragraphs 17 through 35 and from continuing other practices found to be in violation of applicable law;

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are interested;

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a

Plaintiff Bobby Ward's Complaint for   13
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

trial by jury.

Dated:  September 29, 2006                  SANDRA JARIBU HILL, Esq.
                                                                  Mississippi Workers Center for
                                                                         Human Rights

                                                           WILLIAM C. MCNEILL, III, Esq.
                                                               The Legal Aid Society-Employment
                                                                             Law Center

                                                           Counsel for Plaintiffs


                                                     By:     /s/ William C. McNeill, III
                                                                 WILLIAM C. McNEILL, III, Esq.


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff Bobby Ward's Complaint for                                                      14
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552


   /s/ Laurel Kapros
Laurel Kapros

Plaintiff Bobby Ward's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00837-LG-RHW

15